IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

AUG 1 0 2007

CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

---

GENERAL SECURITY, INC.,

                          Plaintiff,

        v.

APX ALARM SECURITY SOLUTIONS, INC.,

**Serve:**
C T Corporation System
4701 Cox Road, Suite 301
Glen Allen, Virginia 23060

                - and -

APEX ALARM, LLC,

**Serve:**
C T Corporation System
4701 Cox Road, Suite 301
Glen Allen, Virginia 23060

                          Defendants.

---

Civil Action No.:

_3:07CV468_

(Jury Trial Demanded)

---

## COMPLAINT FOR TORTIOUS INTERFERENCE WITH CONTRACT, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS, AND FOR INJUNCTIVE RELIEF

Plaintiff General Security, Inc. ("General Security"), by its attorneys NIXON PEABODY LLP, as and for its Complaint for Tortious Interference with Contract, Tortious Interference with Business Relations, and For Injunctive Relief against defendants APX Alarm Security Solutions, Inc. and Apex Alarm, LLC (collectively, "Apex"), alleges as follows:

## Parties and Jurisdiction

1.      General Security is a New York corporation with a principle place of business located in Plainview, New York.

2.      Upon information and belief, APX Alarm Security Solutions, Inc. is a Utah corporation registered to do business in the Commonwealth of Virginia.

3.      Upon information and belief, Apex Alarm, LLC is a Utah limited liability company registered to do business in the Commonwealth of Virginia.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy that exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred therein.  Venue is likewise proper in this division because a substantial part of the events giving rise to the claim occurred therein.

## Nature of Action

6.      This is an action for tortious interference with contract, tortious interference with business relations and injunctive relief arising from Apex's conduct in interfering with the contracts between General Security and its customers.

## Factual Allegations Common to All Counts

7.      General Security has been in business since 1969 and specializes in high quality security devices and protection systems.

8.      Upon information and belief, Apex is involved in the sale of home security systems.

9.      Upon information and belief, Apex has done and is doing business in the Commonwealth of Virginia pursuant to Virginia license number 114822.

10.     In or about the summer of 2005, General Security began to hear complaints from some of its customers that Apex was soliciting General Security's customers, and attempting to unlawfully induce those customers to breach their contracts with General Security and do business with Apex. These complaints came from customers living in the Richmond, Virginia area.

11.     Specifically, on or about May 10, 2007, Lucy Scott called General Security and indicated that she wanted to cancel her contract with General Security, even though she was obligated under the agreement to have her security system monitored by General Security until 2010.

12.     Ms. Scott informed General Security that Apex had induced her to do business with it rather than General Security by falsely informing her that General Security's system would not be operational beginning in January, 2007.

13.     Apex also misrepresented to Ms. Scott that it was upgrading General Security's system so that it would remain operational in 2007.

14.     By the time General Security arrived at Ms. Scott's home, Apex had installed its equipment and removed General Security's equipment.

15.     Similarly, on or about May 16, 2007, General Security contacted its customer, Ruby Sykes, regarding a past due balance on her account. At that time, Ms. Sykes indicated that Apex had removed General Security's security system and installed its own system the prior week.

16.     Ms. Sykes further stated that Apex had informed her that General Security's system would not be operational, beginning in January, 2007, and that Apex was upgrading her system to prevent any problems.

17.     Currently, Ms. Sykes' account represents a lost account for General Security.

18.     Apex has interfered with or attempted to interfere with additional General Security customers including, without limitation, Ernestine Cotton, Robert Lacy, Christopher McNeil, and Rebecca Wiggins.

19.     Upon information and belief, Apex has misrepresented that it is working with the local police department and that, because of recent break-ins, they have been directed by the police department to replace certain General security customers' existing security systems with Apex's own.

20.     In some instances, General Security has been able to regain lost customers, but only after sending employees out to remove Apex's equipment and reinstall the equipment of General Security at the request of those customers, resulting in significant expense to General Security.

21.     To date, General Security has been damaged as a result of Apex's actions in an amount exceeding $75,000.  Such losses have been in the form of lost monthly revenue, costs involved with the installation of new equipment including, without limitation, the cost of equipment and technicians, and staff time necessary to "save" certain accounts.

22.     The true extent to which Apex has interfered with General Security customers is presently unknown, but is believed to exceed those customers specifically identified in this Complaint.

## COUNT I – TORTIOUS INTERFERENCE WITH CONTRACT

23.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 22 as if fully set forth herein.

24.     General Security had valid and enforceable contracts for security monitoring services with several customers including, without limitation, Lucy Scott, Ruby Sykes, Ernestine Cotton, Robert Lacy, Christopher McNeil, and Rebecca Wiggins.

25.     Apex knew or should have known of the foregoing contracts.

26.     Apex, through its employees and agents, intentionally, maliciously and improperly interfered with General Security's Agreements by improperly and unlawfully inducing General Security's customers to breach their contracts with General Security, and inducing them to do business with Apex, for the benefit of Apex.

27.     There was no privilege or justification for Apex's conduct.

28.     General Security has suffered and will continue to suffer damages as a result of Apex's tortious interference in an amount to be determined at trial.

29.     Punitive damages should be awarded in that Apex's conduct was willful, wanton and malicious.

## COUNT I – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

30.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

31.     General Security has developed and maintains advantageous business relations with its customers.

32.     Apex knew about the advantageous business relations of General Security with its customers.

33.     Apex intentionally, maliciously and improperly interfered with General Security's relationship with General Security's clients by, among other things, inducing General Security's customers to sever their relationships with General Security and inducing them to do business with Apex, for the benefit of Apex.

34.     Apex acted with the sole purpose of harming General Security.

35.     There was no privilege or justification for Apex's conduct, and such conduct was unlawful.

36.     General Security has suffered and will continue to suffer damages as a result of Apex's tortious interference with General Security's business relations in an amount to be determined at trial.

37.     Punitive damages should be awarded in that the conduct of Apex was willful, wanton and malicious.

## COUNT III – INJUNCTIVE RELIEF

38.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 37 of this Complaint, as if fully set forth herein.

39.     Upon information and belief, Apex has and will continue to solicit and/or steal customers of General Security through use of improper tactics, including misrepresentation and false statements about General Security and its products.

40.     By reason of the foregoing, General Security is entitled to an injunction restraining Apex from such conduct.

41.     General Security has no adequate remedy at law.

## JURY TRIAL DEMAND

General Security demands a trial by jury on all counts and issues so triable.

**WHEREFORE**, plaintiff prays for relief as follows:

(a)   On the First Count against the Defendants: compensatory damages in an amount to be determined at trial; punitive damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(b)   On the Second Count against the Defendants: compensatory damages in an amount to be determined at trial; punitive damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(c)   On the Third Count against the Defendants: an order enjoining Apex from soliciting and/or doing business with customers of General Security.

(d)   Awarding plaintiff such other and further relief as the Court deems just and proper.

Dated:  August 10, 2007

Respectfully submitted,

Kenneth J. Nichols (Va. Bar No. 71320)
NIXON PEABODY LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004-2128
Telephone:  (202) 585-8185
Fax:  (202) 585-8080
knichols@nxionpeabody.com

***Counsel for Plaintiff General Security, Inc.***